A final argued case this morning is HIP, Inc. v. Hormel Foods Corporation, 2022-1696. Mr. O'Shea. Good morning, Your Honors. May it please the Court. My name is Tim O'Shea. I'm with the law firm Fredrickson & Byron on behalf of the appellant Hormel Foods Corporation. With my time here with you this morning, I want to focus my argument primarily on the two legal errors that the District Court made with respect to adding David Howard of HIP as a co-inventor to Hormel's 498 patent. Finally, I'll briefly touch upon the District Court's clearly erroneous determination that Mr. Howard's oral testimony regarding his alleged contribution of infrared preheating was sufficiently corroborated. With respect to the first legal error by the District Court, the District Court applied the incorrect legal analysis in finding that Mr. Howard's alleged contribution of infrared heating was not well known or in the state-of-the-art solely by looking at the language of the claims in the 498 patent. In that trial, when Hormel's counsel asked the District Court if it was going to address the prior art as it relates to the infrared preheating contribution, the District Court said it would not, and that's at Appendix 37-39. What the District Court found was that because Claim 5 of the 498 patent was different in scope than Claim 1, that answers the question of the state-of-the-art because Hormel got a patent. The District Court's analysis didn't end there. It went so far as to say simply because Hormel claimed an invention as it was written in Claim 5 of the 498 patent and got a patent on it, that Hormel has to, quote, to qualify as a co-inventor, a person cannot simply come in and describe to the inventors what was well known or in the state-of-the-art. What was Mr. Howard's alleged contribution? Infrared? The alleged contribution that was made by Mr. Howard was preheating with an infrared oven. And here the District Court... I'm sorry, and that's it. That's it. Right, and HIP had argued for other contributions that Mr. Howard had made, and as to all the others, the District Court found that they were in fact not contributions. So this is incredibly narrow at this point, right? That's correct. And they also found that in the course of rejecting, what is it, the 350-degree alleged contribution or something like that, that that was actually not his contribution, but that in fact that was inconsistent with the basic, the core of the invention that Hormel made, which is something that keeps anything hotter than that outside of the cabin, the second cabin, right? That's correct. Which a red-hot heating element would not do, and this whole thing was about getting rid of that charred taste on bacon. Yes, getting rid of the off flavor. And the District Court also said that there was no actual evidence supplied by HIP for the significance of saying one of the things you could use for the preheating step is infrared. That's correct. And that's one of the second legal errors that I was going to get to, is the District Courts expressed finding a fact that HIP did not put on any evidence that would establish that the infrared preheating was significant, but then nonetheless went ahead and found that it was significant, and that was the second error that I will touch upon. Going back to... I understood your argument simply to be that the District Court used completely the wrong analytic construct. That the fact that claim five is different from claim one is irrelevant to this inquiry, and that the other side put on no evidence that would satisfy the correct test. That's correct, Your Honor. Therefore, it shouldn't remand, the other side shouldn't get another bite of the apple. Your Honor, the... Hormel's position is that the District Court's legal analysis was incorrect by looking solely to the claims in the patent with respect to ignoring the state-of-the-art, as well as ignoring the other element that's needed... Well, these are on steps one, two, and three of PANU. You started with step three, but step one, two, and three, the same answer on all three. That's correct, Your Honor. The reason Hormel is asking not only that the District Court's decision be vacant, but it should be reversed, because the undisputed trial record shows that the Holm prior patent application discloses infrared preheating, which is the alleged contribution Mr. Howard made to the 498 patent. That's undisputed. HIP did not rebut that evidence that Holm disclosed infrared preheating at trial, and HIP also did not rebut that in its opposition here on appeal. With respect to the significance, again, that's turning to the second legal error. Again, HIP cannot dispute the Court's factual finding. Well, if we were to decide this case on problems one or two of PANU, there's less work that has to be done than if you do it on part three on state-of-the-art and whatnot, because there could be some argument that Holm doesn't necessarily teach the state-of-the-art. It's three years old, and nobody's using it. My point is that there seems to me to be more work that has to be done in the analytic side on step three of PANU than on one and two. That's fair, Your Honor. But it is Hormel's position that those are two independent legal errors that the District Court made. With respect to... I just had a question. I was trying to figure out where the District Court got the idea from that it should depart from PANU and a three-part analysis under our case law, and instead should simply, as he said, create an issue for the Federal Circuit by using the claim construction. You certainly didn't suggest that. Did you understand anything? And I looked at the briefing below. I didn't see any party directly raising this to the judge. Your Honor, neither party raised the standard that would go against the PANU standard. The District Court took it upon itself in issuing its order and adding Mr. Howard as a co-inventor of the 498 patent that it's solely looking at the claim, the difference in scope between Claim 5 and Claim 1 as the basis for its decision with respect to what is in the state-of-the-art and also whether there's significance. And that's what Hormel submits as being two independent legal errors. Your Honor, with respect to the second legal error... This is just simply a suit to correct the ownership, right? Yes, so Hormel... But not an infringement suit with this as a defense? This is a pure correction of inventorship that HIPP brought under 256. HIPP claimed at trial that Mr. Howard was the sole inventor of the 498 patent. The District Court correctly found that he was not the sole inventor. And then he also, in the alternative, claimed that he was a co-inventor. And as Your Honor's pointed out, on a plethora of various items in which he claimed to be a co-inventor, the District Court rejected it except for this one small piece with respect to preheating with an infrared oven. You don't challenge the District Court's finding that Mr. Howard was the inventor of the infrared? You only challenge the corroboration, is that correct? No, Your Honor. Hormel is challenging that the alleged contribution of infrared preheating, Mr. Howard's oral testimony, was not sufficiently corroborated. It's a lack of corroboration, not the fact of the testimony? It's not the fact of the testimony, but also the fact that Horm discloses infrared preheating. Your position is essentially that this patent isn't about infrared? That's correct, Your Honor. You can look to the 498 patent that's in the record, and the patent is about microwave preheating to solve two problems that existed in the prior art processes for cooking precooked bacon. And the 498 patent addressed that with the flavor dilution problem, and then, as Your Honor pointed out, the sort of off-flavor grilled flavor. The infrared preheating is not what made this patentable. And it also was disclosed three years before Mr. Howard's alleged disclosure to Hormel in the home patent application. Your Honor, the last point that I'll briefly touch on is the District Court's third error. I'm not that interested in the corroboration point, so I want to ask you about a doctrinal point in your limited time. Pannu, maybe uniquely, I'm not sure uniquely, but somewhat exceptionally, refers to the possibility of a significant contribution to reduction to practice as a basis for being a co-inventor. Some of our other cases, like Eli Lilly, say it has to be significant contribution to conception. I don't think that distinction is particularly at issue here, unless you tell me it is, but I can't quite find an opinion of ours that says it really does have to be only a significant, or have to be a significant contribution to conception, that significant contribution to reduction to practice cannot itself be enough. Can you enlighten me on the doctrine at all? Your Honor, my understanding of Pannu is that the contribution has to be significant to the conception. I know Pannu refers to or reduction to practice. And so what that issue here is, is whether HIP was able to meet its heavy burden of clear and convincing evidence under Pannu that Mr. Howard's alleged contribution of infrared preheating was significant to the conception. And here the district court expressly found that HIP has not put on any record evidence of significance with respect to infrared preheating. So there is a separate argument here made by HIP that the contribution was significant, if not to conception, then to reduction to practice? No, Your Honor. And that's where the district court made it clear in its decision that it was basing the decision solely on the difference between Claim 5 and Claim 1, and pointing out that this is an appeal issue for the federal circuit. And that's why we're submitting that that was, those two legal errors are a basis for vacating and reversal. We'll send you a rebuttal for you. Thank you, Your Honors. Mr. Selinger. Good morning, Your Honors, and may it please the court. The district court correctly ruled as a matter of law that David Howard is a co-inventor because he contributed the specific preheating method of preheating meat pieces using an infrared oven before cooking the meat pieces in a separate cooking chamber. Mr. Selinger, if you look at this patent, it hardly mentions infrared. It doesn't mention it in the brief summary of the invention. It first mentions it in Column 5, along with other methods. There are no examples showing a use of infrared. This plainly is a microwave patent, and the trial court simply relied on the difference between Claim 5 and Claim 1, and Claim 5 mentions, in a sort of mockish expression, infrared along with microwave and hot air, but that is nowhere indicated as a distinction in the patent. The patent doesn't seem to be about infrared. So how can Mr. Howard be a co-inventor of what is claimed and described in this patent? The short answer, Your Honor, is this. Yes, there is not a great deal of disclosure in the specification. I just recited just about all there was. You did, but with that said, Hormel and Hormel's lawyers elected to include the broader Marcouche claim in Claim 5, and I need to correct one statement. The judge did not find that it put on no evidence. At Appendix 32, what the judge said is he did not recall that it put on no evidence about not insignificant, and we did put on, the record reflects quite a bit of evidence from Mr. Howard, from Hormel Inventors, about the difference being significant. Hormel's... The patent doesn't say so. No, the patent doesn't say so, but the trial testimony supports Chief Judge Conley's conclusions. Can you cite to us in the record where there is the testimony that the judge said you didn't support? What the judge... I don't think he's put on any testimony of record that has established these three things are significant. Right. So that's... But that's... And that point was made strongly in Hormel's brief. I didn't see in your brief citing line and, you know, page of testimony of significance. Well, we did, Your Honor, and... Well, can you help me? I can. Hold on, I missed that. This should be in the subsection from 34 to 37, right? And I'm not seeing it there. We talked about that. Let me just check. Your assistant is trying to give you something. Your helper here. I'm sorry. Thank you. So, for example, on page 36... Where on 36? I'm sorry, on the brief. It says... It's a long page. Right at the bottom. It says, Hormel's reason for broadening Claim 5 to include an infrared oven confirms expanding the preheating method to include an infrared oven is significant. Citing Appendix 868, a testimony that Hormel included the infrared oven to prevent others from circumventing and getting around and copying what you are doing. And that's why it's included, end quote. That doesn't explain why it's equal to, better than, microwave or hot air. Well, in addition to that, let me... I mean, significance of... You can add a limitation to a claim, right? To help you with infringement. Now, you can. But that can make it significant. And I want to... You can say, well, we added infrared, so if somebody uses infrared, we can go after them. But why does infrared matter to the invention? Well, the inventor actually testified that... I don't want to use up all your time. Is this... You're saying that you did... The judge was wrong. You did produce evidence of significance. Is this... I did recognize this from your brief. Is there any other evidence that you supplied? We pointed to other evidence. Can you help us with... You were specific about this, and I thank you. Have we got anything else to offer in pages 34 to 37? Between 34 and... Well, I mean, in your brief as a whole. Yes, I can. Just give me one. So, Mr. Howard testified that it was not merely state-of-the-art or well-known. And he explained why. And he... I'm trying to find the site here. Yes, sir. The inventors on a patent are inventors of what is disclosed and claimed in a patent. Correct. And I get back to the patent again. The brief summary of the invention is almost a column long. It doesn't mention infrared. If you look at the detailed description of the invention, which is almost three columns, it's hardly a mention until the very end when it's mentioned along with these other means, without any distinction. How can the inventor, the contributor to the infrared aspect, be an inventor of this patent? It's a qualitative analysis, Your Honor. And the fact that Hormel elected to expand the claim... Hormel could have simply relied on doctrine of equivalence, but it didn't. It added a Marcuse claim, which included not only the microwave, but also the infrared oven and hot air. And the testimony from Hormel employees... Okay. Mr. Howard at Appendix 380 explained it was... He added it because no one had ever done that before. Mr. Serson, one of Hormel's inventors, said no one would ever use an infrared oven for preheating. But that is antithetical to the fact that the broad claim added that Marcuse group. And by the way, we absolutely deny that and we disputed that the Hormel expert opinion showed that The Marcuse claim is very specific. It's a preheating process selected from the group consisting of... One of the offs was infrared. Home... And I want to say two things about home. First, we're ignoring... We're moving away from what Hormel's expert actually testified about concerning home. It was only three pages at trial and it was nothing. The district court questioned Mr. Unardino, the expert's credibility. Hormel says it doesn't matter, but it does because that's how the district court was educated on home. And if we actually... But even jumping to what home says, Home Figure 6 shows two elements. It's called a browning chamber and a cooking chamber. The browning chamber has superheated steam. The cooking chamber can be an infrared oven. Now, at paragraph 76 and 78, which are not mentioned by Hormel's expert, appendix 1407, the specification says in addition to the browning chamber using superheated steam, that heat can be supplemented with an external source. And that external source can come from an infrared oven. But those paragraphs don't say you can preheat at all or even brown using only an infrared oven. And that's what the claim requires. The Marcuse claim consisting of. So let me go back to Your Honor's question. And. In addition to what the court has as evidence, in addition to what the judge pointed to, the difference in the claim language was Mr. In addition, Mr. Serson's testimony that no one would would ever use an infrared oven. But notwithstanding his belief, Hormel's patent counsel was sufficiently concerned about people using infrared ovens, that he added the infrared limitation as to keep others from designing around. That's an appendix 867, 868. And Hormel's patent counsel expanded that after Hormel's Mr. Muller, the food scientist, had accepted Mr. Howard's loan of an infrared oven for preheating meat products before cooking the meat products in unitherm spiral oven. Plus, we're not talking here about whether a use of an infrared oven would infringe claim five. We're talking about joint adventures. We are. And we're talking about a contribution which is not significant. What what what Chief Judge Conley did is he compared claims one and five. And, you know, I'm sure the court has seen that. And when when he pressed Hormel's counsel during argument, Hormel's counsel argued only to two differences. And the the fact that. One of the three Marcuse group processes comes from Mr. Howard, I submit is significant. And just just by example, in the Ethicon case, Dr. Choi contributed one of two embodiments. And there was a means plus function limitation. The other limitation, the other the other embodiment came from the person who said Dr. Choi was not the inventor. And the court said, no, that contribution was sufficient. What's the what's the consequence of Mr. Howard being a co-inventor here? A competitive company co-owning the patent? Well, Mr. Howard has retired and hip hip hip from the business. So it's not a he's not in the business of of making meat products or selling equipment. He sold that business. Has he has he licensed to hip any interest he has in this? He has not. This is because he doesn't yet have. Well, I say that we there may be a quick claim deed, but which gave hip standing. In this lawsuit. But there has not been a a license because he doesn't. Until the patent office has been instructed to change inventorship, he has nothing to license or sign or sign. That's correct. Your time has expired, Mr. Selinger. Thank you very much. Thank you, Your Honor. Mr. O'Shea has two and three quarter minutes for a bottle if you need it. Thank you, Your Honor. Some brief rebuttal points with respect to the district court's decision and the finding that it did not put on any evidence of significance, which is that pages thirty one to thirty two. I think it's important to point out hip did not appeal that finding by the district court. The other the other points I want to make briefly, Your Honor, is, as you pointed out, the focus of both the specification and the claims of the 498 patent described preheating with a microwave to solve to to solve a particular problem. And it's a method claim. And that shows the insignificance of the infrared oven. And under similar circumstances, this court, for example, in the Nartron case, determined a contribution to a claim. Limitation was not significant when it was measured against the full dimension of the claim invention. How do we evaluate the role of testimony before the district court? Compared with the disclosure of the patent? Can you repeat the question, Your Honor? Which governs the disclosure of the testimony? A trial. The disclosure in the patent versus testimony at trial. The disclosure of the patent, the 498 patent. Right. Patented issue. Yes. And in Nartron, one of the things that this court listed as evidence of insignificance was the fact that the specification in that patent and the claims of that patent focused on other elements and that the specification mentioned the contribution in that particular case only once as background and without any details. And here, the same circumstances apply. And even further, because infrared preheating is only listed once as a potential option for preheating. It's not even a requirement of the claim. Last point that I want to make, Your Honor, with respect to the HOME patent application that discloses the infrared preheating, at page 1407 of the appendix, paragraph 78, HOME is specifically explaining a two-step cooking process where browning is the preheat step before cooking in a second compartment. And if we look to that same paragraph, it's teaching that the different cooking chambers, there's two cooking chambers, can be heated with different heating sources, and that the separate cooking source could be a microwave oven, a hot air oven, or an infrared oven. And that's at paragraph 78 of appendix 1407. Was infrared used in the browning first step? What HOME teaches is that the browning... Your other side argued that the infrared was only in the second oven. Is he right about that? He's incorrect, Your Honor. If you look at paragraph 78... I'm asking you that because that's what he said. Yes. And you're saying the question about whether or not browning is preheating, that was some expert said yes, and that isn't being contested. That's correct. The first oven in HOME is preheating. The question was, your other gentleman who's opposed to you here today, I heard him to say that the infrared was only used in that second oven, an external source in the second oven. And it could be used in either oven, the first or second under HOME. And if you look at paragraph 78 of appendix 1407, that clearly delineates that. And yes, Hormel's technical excerpt at trial... One further point, Your Honor. Yes, Your Honor. I thought the presiding judge's last question was a very interesting one. What happens if you have a case in which you have a lot of expert testimony as to significance, saying, for example, well, infrared really does make a difference, yada, yada, yada, right? In these methods, in the Marcush line. But the patent itself is silent. I think that's what Judge Lurie was getting at, is there is a situation in which, even though there might be testimony as to significance, it's nowhere reflected in the document itself. Would you therefore ignore the testimony? Correct, Your Honor. This panel can look to the patent itself to determine... You have a case that suggests that, I think. And typically in these cases, testimony is what drives the case in the beginning because somebody shows up and says, well, I was the inventor, right? And what I would submit to the panel is that under federal circuit law, it's HIP's burden to come in and show the significance of the alleged contribution. And here we have a specific factual finding by the district. Is it possible to make that showing on significance with evidence that is not in the patent, in the spec, or in the claims, but is purely expert testimony? Right. And here we have HIP provided no expert testimony with respect to the significance. And as my colleague has just pointed out, the Tavery case, even in light of expert testimony, this court found that the element contributed was important to the invention, but still found there was no co-inventorship because of the lack of the significance of the alleged contribution, simply by looking to the patent. Thank you, counsel. Thank you both. The case is submitted. That concludes our arguments this morning.